**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | |
|---|---|
| Judith Hizer, | |
|       Plaintiff, | |
| v. | Civil Action No.: 3:10-CV-260 JVB |
| South Bend Tribune, | |
|       Defendant. | |

**OPINION AND ORDER**

Plaintiff Judith Hizer sued Defendant South Bend Tribune claiming that Defendant violated the Equal Pay Act and Title VII by failing to pay her the same wages similarly situated male employees receive. Defendant moved for summary judgment, and the Court grants the motion.

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Defendant's Motion to Strike**

Defendant moved to strike Plaintiff's affidavit and affidavits of two freelance journalists which Plaintiff submitted with her response to the Defendant's motion for summary judgment. Defendant argues that Plaintiff's affidavit should be excluded from consideration because it contains statements that contradict her deposition testimony. In addition, Defendant objects to

the affidavits of the freelance journalists because the journalists had not been disclosed during discovery. While some of Defendant's contentions appear to be meritorious, the Court need not rule on the motion because, even if the challenged evidence is considered, Plaintiff's claims cannot succeed.

**C. Facts**

As relevant to Defendant's motion for summary judgment, the Court notes the following facts:

**(1) *Plaintiff Job***

Mike Pozzi, a supervisor at Defendant South Bend Tribune, hired Plaintiff Judith Hizer in July 2005 for a part-time editorial coordinator position. The editorial coordinator position entails working 32 hours a week at the rate of $12.75 an hour. Plaintiff maintains that Pozzi told her at the time of her hiring that her job "could or may" lead to a full-time position, if her work load increased. (DE 48-2, Pl.'s Aff. ¶ 2.) According to Plaintiff, the work load did increase, beginning in 2006 through 2008, but Pozzi has not converted the position into a full-time position. In fact, he and others told her that, as a result of budgetary constraints, her position could not be converted into a full time position. (*See, e.g.,* DE 43-15, Def.'s Ex. E, Steve Funk's Email to Pl.)

Plaintiff's payroll data for the 156 weeks from 2006–2008 show that for 48 weeks, or 31% of the time, Plaintiff worked less than 32 hours a week; for 6 weeks, or 4% of the time, she worked more than 32 hours a week; at no time during those two years did she work 40 or more

hours a week.

Sometime in 2008, Plaintiff talked with Pozzi and told him that she could no longer work more than 32 hours a week.

Plaintiff's job description lists the editorial coordinator's duties: "to write, edit, and coordinate editorial items for niche magazines; to help create and assign stories and photos; other duties as assigned." (DE 43-8, Def.'s Ex. C, Job Description.) Plaintiff's position did not require a college degree, although one was preferred. Plaintiff has an associate's degree.

Beginning in 2007, Plaintiff supervised 31–35 freelance writers and was responsible for producing a monthly publication called *Inside Michiana*. Plaintiff does not have direct, day-to-day control over these writers but she coordinates their story leads and addresses their questions regarding compensation. In addition, Plaintiff developed freelance guidelines for publication; formulated CD and book reviews along with press release guidelines; developed event listing forms and an editor's calendar; and developed payment schedules for student freelance writers from Penn High School. Also, Plaintiff did some community outreach, such as visiting businesses to generate stories; calling and emailing marketing representatives in the area; contacting the medical and dental community; emailing and calling local musicians and book writers. Plaintiff submits that her position required exceptional knowledge of the arts, news judgment skills, feature writing skills, and an understanding of business, as well as experience in supervision.

Plaintiff contends that she was able to do in 32 hours what the full-time male editors—Andy Hughes, Mike Petrucelli, and Ed Semmler—were accomplishing in a minimum of 40 hours. (DE 43-4, Hizer Dep. at 84–85.)

Plaintiff was responsible for editing on average 46 pages of content per month in 2007. In 2008 to mid 2010, her editing decreased to 38–42 pages per month. These pages included feature stories as well as advertising.

In 2007, Plaintiff applied for the *Moms Michiana* full-time editor position. She was interviewed by Tim Harmon, Managing Editor of the South Bend Tribune, and a committee, but was not offered the position. Instead, another woman was chosen.

A full-time editor position opened up in 2011, when Petrucelli resigned. Plaintiff did not apply for that position because she felt that she was already doing comparable work and should not have to switch positions to be paid the same wages as the male editors. (DE 43-4, Hizer Dep. at 93:14–21.)

**(2)** *Male Managing Editors*

Plaintiff believes that her work is substantially similar to the work of Hughes, Petrucelli, and Semmler. These three men are full-time managing editors. Hughes's job description requires him to plan, select and edit stories, pages and selections for arts and entertainment coverage; write; deal with the arts and entertainment community; and to maintain extensive knowledge of the arts. His position requires a college degree. (DE 43-10, Def.'s Ex. E, Job Description.) Hughes has both a bachelor's and a master's degree in English.

Petrucelli's duties require directing, assigning and editing stories for the news and feature sections; planning and editing pages or sections of the daily paper; maintaining the Tribune's electronic platforms of traditional websites and social media; and participation in the rotational weekend and holiday newsroom supervision schedule. Petrucelli's position requires a college

degree. (DE 43-14, Def.'s Ex. I, Aff. of Ed Henry ¶ 11.) Petrucelli has a bachelor's degree in history.

Semmler is a local business editor. His job duties include supervising general news coverage and reporters in South Bend and other areas; participating in planning, news selection and policymaking meetings; serving on a team of editors responsible for overall local news reporting, both in print and digital media; sharing editing duties with other local editors, and participating in the rotational weekend and holiday newsroom supervision schedule. Semmler's position requires a college degree. (DE 43-12, Job Description.) Semmler has a bachelor's degree in English and a master's degree in journalism.

Hughes has been employed with Defendant for 18 years, Semmler and Petrucelli for 12 years. Hughes works for Defendant 40–55 hours a week; Petrucelli works at least 40 hours a week; and Semmler works an average of 50 hours a week.

Hughes is responsible for managing and editing the content of about 15 pages per week or 780 pages per year. Petrucelli manages and edits about 16–20 pages per week or 832–1040 pages per year. Semmler manages and edits about 40 pages per day or 2080 pages per year. A page in the daily newspaper issue is twice the size of a page in Plaintiff's niche magazine. All pages include both news stories and advertising.

Hughes directly supervises three staff writers, one of whom is a full-time employee. Petrucelli supervises staff writers and manages the comics budget. Semmler supervises all of the employees assigned to the Business section of the daily newspaper, the Tribune Business Weekly, and the Metro reporters and has total decision making responsibility for their content. He is responsible for the budget for the business section of the newspaper and the Tribune

Business Weekly.

Having reviewed generic internet postings and having talked with someone who knows the editorial market in Indianapolis, Plaintiff speculates that the three male editors earn about $40,000–50,000 a year, but she has not presented any admissible evidence as to their actual salaries.

### D. Plaintiff's Equal Pay Act Claim

Plaintiff maintains that, although her job duties were substantially similar to those of the three male managing editors, she was paid less than they were paid and received no employment benefits, in violation of the Equal Pay Act. According to Plaintiff, the difference in pay is based on the fact that she is a woman. Plaintiff contends that she completes the equivalent of full-time work in part-time hours. Plaintiff also insists that Defendant has prevented her from working more than 32 hours.

Defendant counters that Plaintiff is unable to establish that the three male editors are similarly situated to her in their educational backgrounds, job duties, skill levels, and, most importantly, the number of hours worked during the week. Defendant believes that Plaintiff has not presented any evidence to create a genuine dispute of material fact and that Plaintiff's equal pay claim fails as a matter of law.

The Equal Pay Act ("EPA") prohibits employers from paying employees different wages because of their gender:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the

opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d).

"To establish a prima facie case of wage discrimination under the EPA, [Plaintiff] must show that: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). "The EPA does not require proof of discriminatory intent." *Id*.

If a plaintiff is able to show a prima facie case, the burden shifts to the defendant to establish one of the defenses enumerated in the statute. "The fourth affirmative defense (any other factor other than sex) is a broad 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex." *Fallon v. State of Ill.*, 882 F.2d 1206, 1211 (7th Cir. 1989). "The justification need not be a good reason, but merely a gender-neutral one. The justification must also be bona fide. In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith; it was not meant to provide a convenient escape from liability." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008) (citations and quotation marks omitted).

The parties agree that the three male editors earned more than Plaintiff[1] and that they worked under similar conditions as Plaintiff. Thus, to establish a prima facie case, Plaintiff needs

---

[1]As noted in the fact section, Plaintiff does not present any admissible evidence of their actual earnings. However, Defendant has not challenged Plaintiff's assertion that the three male editors earned more than Plaintiff.

8

to show only that she did equal work requiring substantially similar skill, effort and responsibilities. However, Plaintiff fails this task.

The parties' submissions reveal that Plaintiff's position did not entail substantially similar skill, effort and responsibilities as those of the three male editors. Although Plaintiff and the three male editors share writing and editing duties, they are not alike in their educational background, the length of employment with Defendant, the level of supervisory authority, and the number of pages produced. But most importantly, they are not alike in the number of hours that they work each week.

Plaintiff's position is a part-time position. In 156 weeks from 2006 through 2008, Plaintiff worked less than 32 hours a week 31% of the time; only in 6 weeks, or 4% of the time, did she work more than 32 hours a week; and at no time during those two years did she work 40 or more hours a week. On the other hand, the male editors work full-time and more: Hughes works 40–55 hours a week; Petrucelli works at least 40 hours a week; and Semmler works an average of 50 hours a week.

This difference undercuts Plaintiff's prima facie case. Although Plaintiff maintains that she is able to accomplish full-time work in part-time hours, she cites no authority for her proposition that part-time work, albeit by a very productive employee, is equivalent to a full-time performance. In fact, the Court of Appeals for the Seventh Circuit has noted the opposite.

In *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997), plaintiff, who has been working part-time as a legal counsel for the defendant, sued the defendant under the Pregnancy Discrimination Act and Title VII. In her lawsuit, plaintiff claimed that defendant discriminated against her because she was pregnant. The district court found that plaintiff could not establish a

prima facie case of pregnancy discrimination because there were no other part-time attorneys and thus she could not show a similarly situated person who was treated more favorably than she.

The Seventh Circuit affirmed the district court noting the unlike the characteristics of the two positions: "It is also clear, however, that we cannot compare [plaintiff] with the nonpregnant full-time attorneys as she suggests, because full-time employees are simply not similarly situated to part-time employees. There are too many differences between them; as illustrated in [plaintiff's] case, part-time employees work fewer hours and receive fewer benefits." *Ilhardt v. Sara Lee Corp.*, 118 FG.3d 1151, 1155 (7th Cir. 1997).

So it is here. Plaintiff's position is a part-time position, limited to about 32 hours. Even when Plaintiff exceeded, though rarely, that number of hours during the period of 2006 through 2008, she has never worked full-time. Since Plaintiff presents the full-time editors as the only comparators, her claim that she should be paid the same as the full-time editors while working part-time fails as a matter of law.

The flip side of Plaintiff's EPA claim is that Defendant failed to convert her position into a full-time employment. According to Plaintiff she was promised this by Pozzi when she was hired. There are two problems with this contention. First, in her response brief Plaintiff characterizes Pozzi as guaranteeing her full-time employment. However, her own affidavit shows that Pozzi spoke, at best, of a possibility—not a promise—of full-time employment: "Although my supervisor Mike Pozzi initially hired me on a part-time basis as an Editorial Coordinator, he told me that the job *could* or *may* lead to full-time, if my overall duties increased, which they did during my employment." (DE 48-2, Pl.'s Aff. ¶ 2.)

Second, even if Pozzi did promise eventual full-time employment, Plaintiff would have to present some evidence that his promise was broken because Defendant would not pay her—a woman—the same wages as to a man. That is, for Plaintiff to prevail under the EPA, it is not enough for Pozzi to break the alleged promise; he must have done that on the basis of a prohibited reason. Plaintiff has no such evidence. She has not presented a similarly situated male employee who was promoted from a part-time to a full-time position, while she was not. In fact, Plaintiff does not even attempt this burden. While she does passingly point out one unnamed person who was offered the editor's position at *Michiana Moms*, a position that she also applied for, insofar as the Court can tell, that person is a woman. (*See* DE 49-4, Pl.'s Dep at 36–37.) Without direct evidence that Defendant was violating the EPA and without showing a similarly situated person who was treated more favorably than she, Plaintiff's claim that she was not promoted to a full-time position in violation of the EPA fails as a matter of law.

**E. Plaintiff's Title VII Claim**

The EPA standard is basically the same standard applicable to Title VII cases, *see E.E.O.C. v. Sears Roebuck & Co.*, 839 F.2d 302, 343 (7th Cir. 1988). While there may be a difference in who bears the ultimate burden under the EPA as opposed to Title VII claim, when a plaintiff fails to present the EPA case, her Title VII claims founded on the same facts crumble as well. *See Fallon v. State of Ill.*, 882 F.2d 1206, 1213 (7th Cir. 1989). For this reason, the Court grants summary judgment to Defendant on Plaintiff's Title VII claim.

**F. Conclusion**

The Court grants Defendant's Motion for Summary Judgment (DE 43).

The Court denies Defendant's Motion to Strike as moot (DE 59).

SO ORDERED on February 24, 2012.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE